United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and the Son of God. Well, I would say, I usually say be seated, but that doesn't work for the Zoom, so I had to change my script. But good afternoon, counsel. As you know, I'm Judge Carl Stewart. I'm in Shreveport. I'm deeply honored to have two of our smartest and bright judges as colleagues to make sure I don't make mistakes. Judge Steve Higginson is in New Orleans, and Judge Corey Wilson is in Mississippi. So we have, you know, so this is our group. So for those of you wondering, as judges, we sometimes shrug about these cases where the argument time is so broken up that it's really not a heck of a lot you can say in two minutes and that kind of thing. But we have experience doing it. So the point being, we have read a whole lot of this. We have not read the record from beginning to end, but we know it's fact-intensive. We've looked at a lot of it. Our law clerks in helping us have helped us get a good handle on a whole lot of facts that is here. So we never really worry about you starting in Genesis, shall I say, and working us through Revelation, okay? So, you know, we're hot in the sense that, you know, we know what the case is about and so forth. Now, we have an interesting dichotomy. On the one hand, the argument is that this is just a mutual admiration society book club. And on the other hand, the side who says this is the worst drug cartel and gangsters this side of the earth. So we all find that the case is probably somewhere in between all of that. So the point of that is to say, we put the case on oral argument for you lawyers to help us win a down, you know, in this case and answer the questions and so forth. So that is to say, use your time succinctly on the arguments that are best suited for the time you have allowed. Number two, the red light will not interrupt you from answering the judge's questions. If one of us has questions, you know, I'm telling you now without asking, we want you to answer the question. And there's a high probability that we'll have a lot of questions. So that's just so you know, since we got so many faces on the Zoom, don't choke on it, but go for, you know, the most important, you know, arguments that's going to help us out. So having said that, we start with counsel for Mr. Forcia. Ms. Rhodes, you're from the AFPD, so you know how this goes. So go for it. May I please support? Good afternoon. My name is Celia Rhodes with the Federal Public Defender's Office and I represent Mr. Forcia. Because there's so many appellants in this case, we've tried to divide our time among the various issues. Co-counsel intends to address among other the 924 issue and the enterprise issue, which are broadly applicable. And with the court's permission, there are two specific paths to reversal that I would like to highlight. The first path is through the lacking RICO and VITAR interstate commerce element. And the second is how the evidence in this record cannot establish participation in a drug conspiracy under black letter conspiracy law. RICO and VITAR require proof that the alleged enterprise's affected interstate commerce. The government has to prove that fact in each individual case beyond a reasonable doubt like any other element. And because the activities in this case were purely intrastate and hyperlocal, the government had to actually demonstrate the interstate effect of those activities. This case is exceptional in the lack of proof for that element. This court has never sanctioned evidence this thin, as far as I can tell. So affirming here creates a law. It necessarily lowers the evidentiary burden for an offense that's essentially a federal pass-through provision to state criminal law. The government is- I haven't heard as many of these cases as certainly Judge Higginson, but in many of these cases, the government will put on an expert to talk about drugs and guns and also to try to establish the IC portion as such. So I hadn't read the whole record, but I take it there was no expert or pseudo-expert to lay the context for the interstate commerce or the other part. It's all lay testimony. Is that it? Exactly. The only testimony is that individual enterprise members, in fact, sold drugs. We know that they sold crack cocaine and marijuana. You're absolutely right about other cases. In past cases, there'll be evidence like the drugs were trafficked from Mexico through Columbia. Even in non-drug cases, bail bonds were written through companies in California. So there's always in past cases in this court been direct evidence or not. I shouldn't even say direct. There's just been evidence that there was some sort of interstate connection. So in this case, the government has to ask for a per se rule. They have to ask that this court to adopt a rule that any time enterprise members engaged in localized drug sales, the government automatically has proven that the enterprise affected interstate commerce, even without any evidence. All right. Let me ask you one more question. Okay. I'm assuming here that the judge used the pattern Fifth Circuit instructions. So with respect to the interstate commerce element, well, without bearing down, is that what was used here, the pattern charge? Yes. The pattern charge was used. And I should just point out that this argument about drugs that that was raised on appeal. So it's not as if the government argued to the jury in closing, for example, oh, well, we've proved that they sold drugs. And we all know that drugs come from out of state. And therefore, the interstate commerce connection has been proven. Of course, we would argue on appeal if they had done that, but that was arguing evidence not in the record. So instead, this is an appellate argument. The government is claiming that because they proved that there were drug sales, that that drug trafficking automatically that we can assume that this court can assume on appeal that that automatically affected interstate commerce. And that's based on a misread of RICO and Vicar's text, as well as a confusion between jurisdiction and evidentiary proof. The government argues that by participating in the market for illegal drugs, this enterprise, quote, affected commerce over which the United States has jurisdiction. The government is conflating the scope of federal jurisdiction, Congress's regulatory power, with the required statutory elements or evidentiary proof. The fact that federal prosecutors have to prove in each and every case under the text of the statute, Congress's jurisdiction is not evidence that proves an interstate effect of a specific enterprise's drug activities as the statute requires. And it looks like this confusion is based on a misread of Taylor, which is a Hobbs Act case. Unlike RICO, the Hobbs Act doesn't require prosecutors to prove any sort of interstate effect. Instead, it covers robberies that obstruct or affect any commerce over which Congress has jurisdiction. So the legal question in Taylor was whether localized drug commerce qualifies. And of course it does under Raich. Even in the absence of a demonstrated interstate effect, in any given case, Congress has jurisdiction to regulate local drug activity. That doesn't mean as a factual matter that all local drug activity, that any given local drug activity affects interstate commerce. Under Taylor and Raich, that effect just doesn't matter for jurisdictional purposes. So the court in Taylor held that proof that a robbery was committed with intent to steal drugs or drug prostitutes is sufficient to prove guilt under the Hobbs Act, because those facts presented by the government actually demonstrate interference with drug commerce. And it doesn't matter where the stolen drugs came from, because the interstate effect is irrelevant. You can steal homegrown marijuana under the Hobbs Act. It doesn't matter. But under RICO, prosecutors do have to show an interstate effect. It's an express, factual element of the offense that the jury must find. So the question here isn't whether, as the government opposed it, Congress has jurisdiction over the illegal drug market. The question is whether the government demonstrated that this particular enterprise's activities, their local drug activities, had an interstate effect. And as Judge Stewart, you noted, the government hasn't presented any evidence to prove that effect. And that makes the case totally different from this court's past cases. Not sure if Velazquez, for example, which the government cites, witnesses testified at trial that the drugs being distributed by the enterprise had been smuggled in from Mexico. Velazquez certainly does not stand for the proposition that local drug sales alone automatically satisfy RICO's interstate commerce element. Now, if the court doesn't have any questions about that, the government also has a sort of fallback argument about drug-related violence that I can address, which is that the there's several other issues that maybe your colleagues are going to talk about. On this one, do you have a single authority that if we accept that there's proof that it was a half-decade-long drug-trafficking daily enterprise, do you have any court authority that would say that doesn't suffice for the interstate commerce element? I don't think that this court has ever addressed a situation where they did not enter that proof. So this court is unmoored from its past precedent. Has any court ever overturned a drug conspiracy or RICO enterprise for lack of interstate commerce when the testimony is that it's daily for half a decade and the amounts get as high as 280? Or do we do the sufficiency arguments have to bleed into this one? Do we have to accept that there was no proof of that sort of continuity of trafficking? So there's no authority in the case. I don't think that this sort of gets to broader law about what inferences are permitted, what assumptions, what facts, what's considered to be common knowledge. There was no Rule 29 argument specifying this, was there? No. Was there, getting to your client specifically, the ratification proof, that wasn't identified either at Rule 29 and no instruction was requested either? Yes. So the ratification issue is different. Now, I'll say in defense of trial counsel on the drug issue in Rule 29, the government did not argue that drugs automatically satisfy the interstate commerce nexus to the jury. They argued that two guns and a crime limit interstate. I guess I'm wondering, just to your defendant, what issues are we not looking at through the lens of plain error? Right, ratification, I assume we are. The Jones-Davis argument we are again, I think, wasn't preserved. So the ratification, taking them one by one, interstate commerce is a sufficiency argument. That was preserved by a general motion for acquittal at the conclusion of trial. So that's preserved. Not specific to this issue, but this court has held that a general motion satisfies that. Ratification, the government is arguing without support that that is under plain error. But this court, I think especially Peters is the most helpful, examines that under a general sufficiency framework. That's a Judge Dennis decision. In that decision, Judge Dennis looks at each of the sufficiency arguments in turn, finally reaching the argument that there is insufficient evidence to support the conviction on count one, because the government did not prove that he ratified his involvement in the conspiracy. And Judge Dennis applies the general sufficiency standards overview, does not look to whether that was argued specifically. Now, we're not making a jury instruction argument about ratification. That's a separate argument that we didn't raise, frankly, because it wasn't preserved. And this court has held that the fact that you need an instruction, that will not be plain error, because the court has not yet held that that instruction is necessary. There's also a jurisdictional argument. And just because you've got 13 seconds on your second point, sufficiency. Is it true that Dorsey and Boyd, for example, both stated that the YMM was a violent drug? At least that was their testimony. So for us to disbelieve that we have to say that's incredible as a matter of law. Is that the direction of this argument? No, Your Honor, you're in Dorsey, I think it's a quibble that you're in Dorsey testified that they were violent gang that sold drugs. I think my primary my first argument is drug trafficking was not an activity of YMM. But my primary argument for interstate commerce is, even if it was, the government only proved localized drug activity. And this court cannot assume on appeal at the government's urging a fact that's not in the record, which is that local drug activity necessarily in each given case affects interstate commerce, which is what RICO and by far require. So it does not matter whether they were or were not a drug trafficking organization. Under the plain language of the statute, the government still had to prove an interstate connect. And the government always has in this court. Well, in this instance where we have this back and forth of witnesses, we've got recanted testimony. I mean, it's a real smorgasbord if I've ever read it. And so my question is, you've answered my question. They didn't put an expert on. So on the other hand, through the testimony of the defendants that flipped and otherwise, can the government get there through the testimony of the police that were offered to co-defendants and their testimony to lay the factual basis, even if the government failed the way it normally might? In other words, they didn't put it on affirmatively, as you argued, but because you've got co-defendants who testified here and who pled to an enterprise that affected interstate commerce, is the evidence there for the government that way? Your Honor, it would be a due process violation to rely on the fact that co-defendants pled to an enterprise that affected interstate commerce as the factual basis for Mr. Forsh's guilt. We did raise the issue that the government impermissibly provided as evidence, substantive evidence to the jury, Mr. Grayson, Sean Grayson's factual basis. Now, if I recall, even that didn't discuss interstate commerce information. Well, I mean, that's why I'm asking, because I'm going to ask the government the same question. But if we're talking about proof via facts, then we all know you can prove facts a lot of different ways. And I get you if you've answered my question, okay, if they didn't put somebody you know, people who recant and all that. So if through the back door, if you will, if witnesses who admitted to their guilty plea and flipped said some of the magic words, you know, the drugs came from here, dah, dah, dah, dah, dah, dah. I'm just asking you as a matter of law, are you saying that the government can't prove it through that evidence, though it's coming in through a different portal? I'm just saying you got a case or can you tell me as a matter of law that can't be the case? Not that it's the ideal way to do it. But if Mr. Daly argues when he gets there to say, well, we proved it that way. I'm just asking you why we got you on the light. Yes, absolutely. So there is clear law in the circuit that you cannot try a person based on the evidence of their co-defendants, their co-conspirators, their associates, guilty pleas, that they are entitled to a trial decided upon the evidence inserted at trial for the jury to consider. And that leads into the interstate commerce argument as well, because the government is asking this court to assume and find on appeal a fact that is not in the record, that the jury never got the opportunity to decide, which is that local drug dealing always affects interstate commerce. All right, well, we have your argument. That's the reason why I keyed in on asking you whether the pattern charge was given, because my sense, although I hadn't read the argument, is that government counsel may have been arguing to the jury based on what the jury was going to be charged under the pattern, this is what we proved. But I haven't read the argument, and that's why I asked the question that way, but I will. But anyway, you've been responsive to our questions on those questions. I want to clarify, the jury instructions do say that the government has alleged that interstate commerce was affected through drug trafficking and murder. Murder, obviously, I mean, you have to prove that would be unconstitutional to just apply it based on murder. The government in closing, though, abandoned that argument and argued to the jury three times. Never mind, it's based on the two guns that traveled in interstate commerce, as well as the fact that a crime occurred in the interstate. So I wanted to just clarify that since you raised the jury instructions. All right. Okay, well, we appreciate it. You've preserved some time for rebuttal. Mr. Daly's fastening his seat belt. He's chomping at the bits. He doesn't want to respond, but he's got to hold his peace until he can. So you'll get a chance on rebuttal to do it. But we wanted to nail that down because that's a major piece of what's there. But you've preserved your argument. All right. We shift gears to Ms. Towne, your court appointee. You're up now. Yes, your honors. Thank you. Good afternoon. May it please the court. Autumn Towne on behalf of Cedric Keelan. We would reiterate all of the issues previously raised in our initial brief, but with the court's permission, I'd like to focus on the 924 convictions in that argument. So as this court is aware, obviously, RICO no longer qualifies as a crime of violence. And there is recent court precedent in the circuit with United States versus Jones. In this case, there was a similar issue with the verdict form in that it did not require the jurors to specify on which predicate they relied, the RICO conspiracy or the drug trafficking. The jury instructions provided that they could choose, but the verdict form did not give them a spot to do that or require that they do that. Now, the government admits in its brief that it conceded in Jones that RICO is not a crime of violence and that a jury's failure to specify on which predicate it relies would possibly allow it to have relied solely on the RICO predicate. However, the government then argues that despite all of that, these 924 convictions should stand because this, in the instant case, is in fact an aggravated form of a RICO conspiracy. But the elements that were required to be proven at trial did not require the use of force, attempted use of force or the threat of RICO conspiracy. So the government acknowledges that it has no specific cases on point as to this aggravated form of RICO conspiracy, but cites three cases, two in the original brief and one in a 28-J letter that it suggests allows this court to find an aggravated form of RICO conspiracy. It cited the Tsarnaev case out of the First Circuit, Henry Hall out of this court's circuit, and then Runyon out of the Fourth Circuit. But all of those, we would argue, are completely distinguishable from the issue that's facing this court with this RICO conspiracy. In all three of those cases, the conspiracies on which the court there relied to find that the 924 convictions would stand, first of all, all included an additional element of resultant death. And additionally, all of the courts there applied the modified categorical approach in making their assessment of the case. Now, the government has also conceded here that the categorical approach applies in this case, which would suggest that no three of those cases apply and that, in fact, the RICO conspiracy is not a crime of violence and all these 924 convictions must be vacated. Using the categorical approach and focusing on the statutory definition rather than the underlying and individual facts, which appears what the government is asking the court to do, RICO is not a crime of violence. And if the jury possibly could have relied on that as a predicate, then this court must vacate any of those 924 convictions. The government also concedes in its briefing that a Davis error would affect these appellant substantial rights and that if this court finds RICO not to be a crime of violence, then those convictions must be vacated. I'm just going to ask two questions again, time so quickly. Do you agree there was no objection in spite of Davis and Jones being on? So we're assessing this for plain error. And if the jury made a specific finding of murder, why? How would it be a miscarriage of justice for us to say that this was a crime of violence? You are correct on it. There was no specific objection to the character, characterization of RICO as a crime of violence. There were some objections made to the phrasing of counts involved in the predicate, as well as the jury instructions and verdict form. Unfortunately, that happened at a charging conference that was not recorded. We have to look at this even through the fourth form of plain error. We have to say it would be a miscarriage to describe this as a crime of violence, despite a special finding of murder. Yes, your honor, because the RICO itself, which is the one of the predicates that was given for these particular convictions is not a crime of violence. So even though there was a, an additional finding that was put in that the statute itself does not require the use of force. Okay. I guess in just quickly at the end, if we were to reverse, as you request that, that does deepen a conflict with the second circuit, it doesn't agree with Jones. Does it also create a conflict with any circuit, especially the 11th? It seems to recognize the aggravated RICO as a separate offense. Do you understand my question? If I understand your question correctly, and if I don't judge, please feel free to redirect me. I don't think it necessarily does because in this case, the, the way that it was written doesn't include those particular elements that would be needed to make it an aggravated form of, or the RICO conspiracy. Just because they included it as a finding does not necessarily mean that it was listed as elements and using just the statutory definition of it, it is not a crime of violence. Okay. Thank you. Thank you. All right. Thank you, Ms. Towne. You, I think, reserved some rebuttal time. All right. Ms. Mills. Yes. Good afternoon. Alison Mills on behalf of Lionel Allen. I think Ms. Rhodes and Ms. Towne brought their arguments and I just wanted to reiterate that Mr. Allen adopts those arguments to the fullest extent applicable to him. I'll use my time to speak to the insufficiency of the government's evidence generally, and particularly insufficiency to establish an enterprise. An enterprise requires, of course, a common purpose. Are any of the defense attorneys going to talk about the Grayson or Gratson factual basis issue? And are any of you going to talk about that? I'm not prepared to discuss that. I would be glad to cede a portion of my time to Ms. Rhodes if she would like to do that and you would permit that. I don't want to speak for colleagues. The sufficiency is the record and we can read the record as Judge Stewart said, but there are some legal arguments that the Gratson factual basis is a very complicated issue. But you go ahead and use your time as you want. Well, I'll be as quick as I can be and then if there's remaining time. Well, just don't cede your time. Use the time as you had planned to use it on behalf of your client. We'll take care of there being time to address those issues. So don't abandon whatever your approach was. Thank you, Judge Stewart. An enterprise, as you already know, requires a common purpose. The common purpose presumably is to deal drugs, but the government didn't even charge my client, Lionel Allen, the alleged ring leader, with the drug conspiracy in this case. The government charged Lionel with a string of shootings and murders, setting aside whether the government carried its burden to prove that Mr. Allen was the actual driver or gunman. The evidence is that those acts of violence are standalone acts of violence, each deeply disturbing and tragic and each warranting a straightforward prosecution for what they were. You know, not a sprawling RICO conspiracy, but random acts of violence in and around a dangerous neighborhood. What we are left with instead is this sort of Gordian knot of 60 plus witnesses and so many overt acts and counts that even the government lost track in the middle of trial. Most of it seemingly unrelated or related only by coincidence and neighborhood, none of it presented in a coherent order, jumbled up and stood out. To unravel that myth, though, really all you have to do on this record is zoom out or alternatively zoom in. If you zoom out, the government presented 66 witnesses and only five or six testified consistent with the theory of the case. If you zoom in, you know, I won't repeat myself, you have my brief, but those five or six witnesses we can chance simply were not credible, it's not even close. But it's kind of a lot less than that close, right? Because as Judge against accomplices. So you had that you had devastating cross, I think it was Mr. Boyd, he wrote the personal letter to the prosecutor. And you argued this rule 29, you already been closing, then you argued extensively in Rule 33. So as I understand our law about us declaring as a matter of law that these multiple girlfriends and co conspirators are against nature, they're just contradictory, they, it just can't be true what they say. It's not that they're not credible. I'll just say that, you know, the much closer case is Arledge, for instance, where you had a co conspirator testify, and she wasn't like our conspirators here, you know, a repeat liar. I mean, this case is very different, Your Honor, but I do, I don't think that's your best case. I think that Arledge shows that, well, I think there aren't a lot of great cases, because we don't have a case with this kind of testimony. So I can't point to one just like this. But for instance, in Arledge, you didn't have a witness with a documented history of lying, no other fact. But you're stuck, you're stuck with credibility, though, aren't you? Yes, sir. And I mean, because in this case, the jury acquitted on some matters. So it's hard to say, well, the jury, you know, didn't, you know, sort of work its way through the evidence. I mean, I'm just saying, I mean, it boils down to, as Judge Higginson said, you got to be able to demonstrate an impossibility, so to speak, right? Well, I've done my best, and I will rely on my I think that the reply brief, in particular, with the side-by-side comparison, whether you zoom out holistically or you zoom in, witness by witness, count by count, I think the government over-promised and under-delivered. Okay. That's fair. All right. Thank you, Mia. Mr. Blazon? Yes, Your Honors. Good afternoon, and I appreciate the opportunity to argue before you on behalf of the court. I don't think I've afforded the opportunity to sit much at one of the discussions and even have any input, yet the government believes that he should be part of this grand conspiracy. And that is, in fact, building upon what my co-counsels have argued, is the reason why we focused, or I focused, on the courts denying Mr. Scott's motion for severance. In effect, if, in fact, you accept as true everything that the government presented, Mr. Scott could have been prosecuted in state court for possession or distribution or one sale of 2.2 grams of cocaine and allegedly possessing a firearm. That is not part of any grand conspiracy, any part of any interstate commerce, any part of any RICO, or anything to fit any of the other 50-some-odd, those 60 witnesses in this case, and the government's five superstar witnesses who, by the court's own admission, although we're discussing how to pigeonhole their testimony, uh, contradicted itself as they went on. In other words, one witness, one government witness, would get up and contradict the other government witness. But from Mr. Scott's standpoint, that only shows and proves that he was prejudiced by being lumped in with the rest of these individuals and in this case. But that's always true in a case where there's a motion to sever. I mean, frankly, that's why the government does it, because it is presidential. But being presidential doesn't make it illegal. So, you know the standard review on denial of severance. So, what's your strongest argument in the face of, you know, the standard review on a severance motion to get there? Not so much the facts here, but, I mean, what can get you there to delineate this from others? I mean, in all the severance cases, you know, the argument is, is the prejudice of being linked up. What, what puts you, your client, in a category that we could say, well, here, you know, the standard review is met? Okay, first of all, there were, uh, he was charged with two counts out of some 30-some count indicted. Uh, there were, uh, correct me if I'm wrong, but at least 27 overt acts that were allegedly committed by this group of individuals. And, um, 17 of these acts occurred while Mr. Scott was a minor, was, was not really chargeable with these offenses. And, in fact, some of these, uh, acts occurred when Mr. Scott was 13 years of age, if you do the mathematics. It, they don't show, the government didn't show where Mr. Scott was involved at that young of an age in this group. So, you have this alleged conspiracy or, or organization that's operating over years, yet they're trying to drag Mr. Scott into this. I think the McCray case cited in my brief and the Cortinas, Cortinas case are directly on point. I would, um, I'm not going to berate the same points, obviously, in brief. I think it's well laid out that, that those two that highly inflammatory evidence of other crimes is not sufficient to overcome the prejudicial aspect of being joined in a group where your charges can be easily severable and tried on their own. And there's obviously prejudicial overspill as a result thereof. All right. Okay. Thank you, Mr. Playhouse. All right, Mr. Daly, on behalf of the government, we're over to you. Hey, please, the court. Good afternoon, Kyle Daly for the United States. Let me just ask you, are you on appeal or did you try the case? I am just on appeal. Okay. Just, just want to set my compass right. Thank you, your honor. Regarding the enterprise, this was a straightforward conspiracy case involving a street gang and had all the hallmarks of your typical street gang enterprise. They sold drugs together. Uh, they, some of them pulled money, they shared guns, they enforced their territory. There's nothing unusual about the enterprise, uh, in this case. Come on, Mr. Daly. When I looked at this, I, in 27 years, I read a whole lot of briefs in these drug cases. And I promise you reading this one was different. It's in melpomene and in the folks with 13 and 14 and all of that kind of stuff. I mean, normally there's more rough and ready. I'm not saying improve it, but the fabric of it certainly looked different to me in improving it up as gang, you know, with these young ones and this and that and so forth. It's just like some missing elements that's usually there and the drugs and guns and that kind of thing. So that's why my opening, you know, I said, well, this is like between one side saying, it's just a mutual admiration society of boys and the government saying that this is the most heinous cartel in America. So, you know, I'm just got to join you at the point of you saying this is just typical. It don't look typical to me. That's not me saying you haven't proved the case up, but I'm just trying to meet you at that junction to tell me why it's so difficult. I respect that your honor. I think what's typical about it is that you have two major racketeering activities here. You've got drug dealing. You have a lot of it over years and you have a lot of violence and all this violence is our YMM beefs that are connected to each other where multiple individuals all get involved and are acting in furtherance of that enterprise by shooting people that did not shoot them, but shot somebody else in the YMM enterprise. And as far as street gangs go, the reason I say that it seems typical to me is, you know, you've got the lots of association evidence with the gang signs, the t-shirts, the name, all of this stuff. So, I mean, these defendants were maybe younger than run of the mill and, but they racked up a lot of violence in that amount of time. Okay. I guess you put a witness on even one witness, a flip that says it's a violent street gang, sold drugs, carried guns, committed murders. If the jury believes that you've got the gang, the enterprise. My difficulty was different. My difficulty was the brief kept saying YMM did this. It did it. All of them did it. But in order to support almost any of these convictions, you have to particularize by defendant, join with a furtherance and reasonably perceive the amount. So just focusing on the last one, what would you point to in your brief where you particularized by defendant, how they would have foreseen 280 grants? Where in the brief, do you show us the supporting evidence as to foreseeability of total conspiracy amount? It in the brief, we talk, we talk about it before we get into each individual defendant, we talk about the applicable testimony to everybody and in Boyd's testimony. And I'm not worried. I understand we've got extrapolation law. So you may just have one seizure. We can extrapolate daily. I'm asking you to show me in your brief where you support that each defendant or saw the total amount. And if you didn't do it, do we just have to go and look through it? No, I, I, I, if I could just direct the court to some testimony that would back that up. Or direct me to the pages of the brief for you. Yeah. And I'm sorry, I just, I haven't memorized each page of the brief. And so I can't, I can't tell you exactly where I can, I can find it then here's my bigger problem, which is why I was hoping defense counsel would talk about Grayson because when you get the factual basis in on Grayson, if I'm not correct me, if I'm wrong, I just speak this way, but the first 20 pages of direct are taking them line by line through it. And then in closing, you say, quote, the factual basis is in evidence. Read it. Grayson admitted to conspiracy to spell 280 grams. Let's look at the math. So when I look at that, you took the drug amount as to others. And my question is as any core, any circuit ever, even ours, even in Cisneros ever allowed the government to do that. Contrary to what, how I read Crawford and Douglas, what's your authority that you can convict other people based on a factual basis where the district court here even said to the jury, you can't use a guilty plea against other defendants for guilt. So as far as the authority goes, the best case we have here is, is caught here, which doesn't say that you can introduce an entire factual basis, but what it says is that if a defendant stipulates to that, then, then it should be reviewed under plain air. And that, that really goes to the plain air issue, but obviously they object because the district later that was stipulated to already, but I read that to be, we stipulated our objection already. I don't see how that's somehow a relinquished. Okay. My, I guess my reading of the transcript is a different that stipulating it persuasive. Yeah. Do you agree? This is error. Could the government put a witness of its own on who then says, I don't remember. Then you say to the jury, we don't need to put any other witnesses on. You just heard guilt. Yes. And the reason being is that the reason this comes out in the beginning of the factual basis is because Grayson volunteers, everything in there is a lie. So the government has to go and find out what, you know, we're, we're putting forth the foundation as to whether or not this testimony is going to be inconsistent. And then you've got to accept that it's for impeachment only. Don't disagree with me if you've got authority, but well, my authority is 801 D one, but we don't have case law directly on point as far as in this circuit, as far as going this far. And I'm not aware of any cases and other circuits directly on point here, but, and how would you distinguish it from Crawford and Douglas? How can they cross examine that factual basis? Well, because Grayson was at, was answering questions. So he's, he is able to be questioned about anything. He's saying it's a lie. Well, not, not when the defendants are, when the defense are cross examining him, he, he is, he is giving them everything that they're asking for. So he's being cross examined. They're not being prevented from cross examining him at all. If anything, we're being, he wasn't really answering our questions, which is why we had to lay that foundation under 801 C one. Do you agree a factual basis is incorporated in the guilty plea? The guilty plea incorporates factual basis. And so judge Engelhardt properly said to this jury, you cannot use a guilty plea as evidence of guilt. And yet the defendant, the assistant U.S. attorney said, what I just read to you, this is evidence of guilt. It's evidence of conspiracy and it's evidence of the drug amount. That's, that's true. And I think, and that, that corroborates to me that it was everybody's understanding that this exhibit had been admitted into evidence and was, and it was all the defendant's understanding that was being used as substantive evidence. Well, none of them have argued otherwise today. You're right. So, so yeah, go, go ahead, go back to your, your, your primary arguments. Well, and I would just like to briefly address Grayson's factual basis a little bit more. We, we use this for three limited purposes. And when we talked about the drug amount, that was, that was in the midst of a presentation about drug amount that was, we didn't rely on the drug amount and the factual basis to prove the entire drug amount. We went through the testimony of witnesses and then we mentioned, and by the way, here it is in factual basis, Sean Grayson is agreeing to it. So, so that was not the basis of the proof for, for the drug amount. This is a harmless disargument. It's definitely harmless. And everything in there is, is, is brought about with, through some other witness, for instance, the state statements about shootings with his involvement in one of Alan's shootings that gets out through two other witnesses. So the, the, the government was not relying wholly on, on Grayson's factual basis to prove anything in this case. It was sort of just landy app, as we say in Louisiana. It was pretty devastating landing to hear that a co-conspirator, you know, just read line by line, the whole factual basis, and then have the government say, you can use that against everybody else. I've just never seen it done and, or, or against Crawford and Douglas, but since now, this is an interesting opinion. So go ahead. I'll move on. Thank you, Your Honor. Regarding the ratification issue, the reason that we argue this falls under rule 12 is because this is just not an element of the offense. It's not something that the government has to prove at trial. And when, when the issue isn't raised, it ought to be on plain air. So all we have to show, even under, under Tolliver is that there was a continued participation in the conspiracy. And we did that. I'm just interrupting because these are really interesting issues. Tolliver is our authority, but you would agree. You couldn't convict any of them on juvenile acts alone. You have to have something post 18th birthday, right? That's correct. But Ms. Rhodes client again, he did the Davis. If you believe the witnesses, he did the Davis shooting before that doesn't count, but he did the Smith shooting after, but unless you get an instruction telling the jury, they can't consider the juvenile act. How do you know the jury only relied on an act post 18th birthday? How do we know that? I, I don't think that ratification requires that the jury completely disregarded. It's just, I think what we've got here is you agree with me. You can't convict unless they do find an act after the 18th birthday. How do we know that when no one instructs them, they've got to do it. Because, well, because here we have the evidence, we have evidence of ratification regardless. You have juvenile act evidence. We just don't know whether you were, were they unanimous as to anything post 18th birthday. That's true, but I mean, these are not elements of the jury has to find and that's a proof issue. We analyzed it as a proof issue in Tolliver. It's not like venue. You wouldn't know until the trial evidence comes out. If you've actually shown something like the Smith murder. So it clear, I don't at all understand at 12 B argument, but I do agree with you. Plain error would seem to be implicated because they don't draw attention to it. Rule 29, and they don't ask for an instruction, but I'm still wondering, is it reversible error if a court and the government don't themselves say, jury, you can't convict on juvenile acts alone. Well, and, and one of the kinds of the cases that we started in our brief, it's the fifth circuit case where they brought up the jury instruction issue and it wasn't given. And they said that that wasn't in there. The fifth circuit said that that wasn't in there. But as far as the last, the last time I looked, the government still had the burden of proof. Yeah, we have the burden of proving all the essential elements beyond a reasonable. Yeah. I mean, I just don't quite get the argument of laying back saying these things are playing error. I mean, you're, you're the government and you walk in and says, you know, that's one of the reasons why I started off asking where you drop down because you drop down. So I had a whole another set of questions, but you don't get to, I mean, the government's bringing the indictment. I mean, you know, sort of like my other question, I've never heard of proving the case through the back door. You got to come in with it strong. And if you want to channel the jury's attention to certain evidence, you can't necessarily rely on the patent charge. So I'm still trying to wait to hear that, but I'm going to turn you away momentarily because I want you to speak to the Senate state commerce because I've missed it in terms of the brief, you know, proving up. You heard the early, you know, questions about that, not to deter you from the other line, but I sure want to, I just want to know how you proved it up. As I said, you know, I've read a bunch of these and other judges have, and it's not to say the way you have to do it, but typically there is some expert, quasi expert that, you know, there and all that, they're properly, the jury's instructed, you know, the jury still defines the facts, blah, blah, blah. But here, that's not, that's not to say you have to. So, but it does concern me, the interstate commerce, other side says what you said, it happened on the interstate. So what's your focal argument that gets you over that, you know, the interstate commerce piece is, you know, it's proven not a sufficiency deal. What was the point in trial? How has it shown as a matter of law? It was shown as a matter of law because in Taylor and Raich, the courts found that local drug trafficking as a matter of law affects interstate commerce. And the court that has Taylor and Raich is the second circuit in ACWRT. That's the case that we cited. We proved that there was a drug conspiracy, although it was local, of cocaine of over 280 grams for years. And that proof is sufficient. If local drug trafficking affects interstate commerce, then the jury can, as the court said in ACWRT, can apply its lay knowledge that drugs are imported, especially cocaine imported from other places. And that, and find that minimal effect. And that is all that is required under Delgado is a minimal effect on interstate commerce. What was the jury told in the charge about the interstate commerce connection? That the government was contending that, that the interstate commerce was affected by murder and drug trafficking. So the drug trafficking. Oh, great. So the drug trafficking issue is squarely in front of them. And that's how they're being instructed. We did bring up some other things in closing argument about ammunition and the interstate, but these are, these are really just extra. We weren't, we're not abandoning our argument that, that, that it's affected by drug dealing. It's the jury has instructed that that's what we're contending. Okay. Moving, we could, I'd like to go a little bit back. If your initial part of the argument, you said this was a typical RICO enterprise. It was very straightforward. So I'm wondering, I guess, how that dovetails into this idea that somehow we have this issue of aggravated RICO here, and that can nonetheless be a crime of violence, because I want you to speak, I guess, more in depth about how we get there in terms of the 924 conviction with, with pretty clear authority to indicate RICO is not a crime of violence. So in the circuit, of course, in Jones, as you know, there was a general finding that RICO conspiracy doesn't qualify as a crime of violence, but there we had a different RICO conspiracy because there was no finding by the were actually committed that they actually occur. So what we have here is a situation, and we're not, we're not straying from the modified categorical approach at all is where the jury found that the necessary element of this offense, that second degree murder was committed. And there's, I don't think there can be any dispute that, that the second, the second degree murder satisfies the force clause. Did you say you're not straying from the modified categorical or not straying from the categorical? Modified. But you can't get to the categorical. You've got, you've got a categorical situation. Thank you. I respectfully disagree, but the reason that we get to the modified categorical approach is because RICO is divisible. Under Mathis, if you have a statute that has statutory alternatives with different punishments, then those are necessarily different elements. And so that's what gets us to the, uh, the verdict form, the indictment, the, and the special findings by the jury. We, we, and that is in our brief, uh, as Jones was a plain air or RICO case, wasn't it? And we held not divisible categorical, whereas the fourth circuit case, those are all cases where you are looking at divisible statutes, but are you saying Jones is wrong? Preserving it or you say Jones is distinguishable and somehow you can use the object of the RICO to create divisibility. I did not read in Jones that RICO conspiracy was not divisible. Um, so, so what we are asking is that the sport, uh, visit that issue. We do not think that that was resolved by Jones and find that it is divisible as a result of the, of the two different kinds of punishments that you can receive under the statute. How are those, that's not a new offense, right? Those, you know, where this argument goes, those are penalty enhancements, but because, because they enhance the sentence, they are necessarily, necessarily elements under a friend and Eileen. And that's what the court's found in the case that we're relying upon Sarnia and running where, because that, because that element aggravates the sentence, it is an element of the offense and fits in with the definition of the offense. It has to be proven by the jury. It has to be found by the jury and therefore it is an element. And you're saying that's T and you're saying that's teed up in this case for this panel to find, is that what you're saying? Yes. Yes, your honor. We, yes, your honor. We are because go ahead because unlike in Jones, the, the, there was a special finding here that the jury in this week of conspiracy, uh, as opposed to Jones and the circuit, remind me again, the circuit that is most definitively accepted that with an outcome determinative result, rather than just saying there may be this strange aggravated Rico creature based on the enhancements. What's the circuit that is categorically taken the position you fit. This is a very new argument. The only other circuit to even look at this is the 11th circuit. And, uh, I believe it was a green case that you mentioned earlier, judge, judge had a consistent, uh, just adverting to maybe that might exist. We don't have to decide. Yeah. What they were saying is that those defendants there weren't charged with it, but we know the defendants here were charged with it because, uh, they were, they were sentenced to life. Um, and we have the, the jury verdict form here that shows that that's what they found. Um, I'd like to move, uh, briefly to the Batson issue. Um, and this case, factually, as far as the way that the Batson analysis was, went, was gone through by judge Englehart, um, is, is right on pace with, with the Bennett decision where, where the judge just simply didn't believe, um, the reasoning that was given by defense counsel as to three of the jurors, but this court, I'm sorry, judge Jacobson, do you have a question? Well, I lean forward. You're right, that it's, it's, it's, um, no, you're right. I did have a question. I mean, I know at that third step, we're really deferential. It's really hard to know what the district court is thinking is believable. But when I look at the transfer, there's no statement whatsoever, even by the government that the defense attorney is stating something pretextually. I mean, I'm thinking, especially that juror who's a career military guy, the court just receipts him. That's all he says. It's one sentence. I'm receiving him. Where, where do you discern him having come to the conclusion that the race neutral, powerful military career guy might not like gang murderers, um, was a pretext. I think it's implicit in the court's findings where he's steps. He's telling the defense council, uh, on various facts, for instance, um, they are trying to get one juror off because of the transportation issue, but another juror, they didn't, um, he's there, there's no finding as far as that particular juror is concerned, but I guess the government's really comfortable with the position it's urging because usually Batson is used against government. And as far as I can tell here, it's simply put them on, not even, I don't believe you put them on no explanation. So whenever, whenever the government strikes a district court has authority at that third step to just look at, just say, receive them. And that somehow equates to a finding of unbelievability. Yes, you are. I think it's an, it's an implicit finding, um, especially when you have the pretext here, where it's all 11 jurors are kind of the same race. Um, but the court actually doesn't even have to reach that issue because since Rivera, every circuit court to address these reverse Batson challenges have found that as so long as the jurors are qualified, uh, and there's no doubt that the jurors here were qualified, that this is a harmless error issue. I saw that argument and I don't remember doing that myself ever. So tell me, can you point to a fifth circuit case that has actually said, um, has actually said yes, pretext, but harmless because qualified. Has any court actually said that? Cause that seems like a pretty crazy harmless school. Nope. Uh, this circuit has not reached it yet, but the first seventh, eighth, ninth and 11th have all reached that issue. And that was it. And we've cited all those cases and footnotes. So what have we said about harmless system in the Batson context? It hasn't been addressed because the sport has always affirmed the court's decision. Um, yeah. And you're saying affirm, you remember what the government said was the reason to knock off that juror to get them reseated? I mean, the, the government lodges challenges and the judge sort of took over the, uh, the analysis there. And, and, uh, so did anyone, did even the government ever say, don't believe the defense attorney about the military guy? I don't think that there was any argument by the government specifically to that, to that. Yeah. Um, the judge just made the credibility finding. And if there's, uh, if there aren't any more questions, uh, we'll wrap up and, uh, and thank you. Oh, no, no, no, no, not that easy. I always have questions. Yes. You're not getting out. You don't use all six minutes. So are you there? Yeah. I mean, and you're well prepared and I appreciate that. So therefore it is helpful to be able to ask. I'm really curious about, um, these mathematical extrapolation cases. Um, um, you remember the Daniels opinion we dealt, we did there reject the government's argument of what we called the tip of the iceberg argument. How would you distinguish Daniels from here? That in Daniels, the jury was asked to assume that a half a half a kilogram amount of, uh, of drugs was being transported before the sales. And so there was just no, there was no evidence to back that up here. We have, uh, we have somebody who has testified or who has tested cocaine thousands of times tell the jury and all my expert experience doing this 85% of these crack rocks are all a tenth of a gram and the remaining 15% are, are typically more. And, and so that, that is the main difference between this and Daniels is that the jury has, has expert testimony to rely upon to make that, that multiplication amount. There's nothing sketchy about the math here. They're, they're just, they're just finding whether or not, uh, 2,800 crack rocks are sold, uh, during these years of this drug conspiracy. And we did the math and closing argument and in our brief, and you get to that very easily. So, so Daniels is relatively easily distinguishable from this case. Last question. Um, this was up before us before, and I mean, we made it because the government disclosed the, um, I forget which fellow was juicy. It was the same. Um, and that was nicely done. The prior panel that had this case, it was a single judge order. Do you recall the specifics of the order? It was remanded back, limited remand appeal suspended, and it just came back up to us. I apologize. That's not something I looked at recently. Yeah. Okay. Well, and with that, the government will submit, thank you very much for hearing this case. Ah, all right. We'll let you go. All right. We're back. Uh, back to you on rebuttal and, you know, you're not limited. Um, this Rhodes, there were a couple of questions that were asked earlier, but that's why you got to rebuttal your anchor. So you can cover the terror, cover the territory. Go for it. Judge Higginson. I get a sense you're here to I want to do that very quickly on nine 24. Um, Jones also involved. So even if Rico is divisible to get you to the separate sentencing provision, which it's not, it doesn't matter. That's what Jones covered as well. And just illustrates why that is not categorically kind of violence, even if students didn't exist, that sentencing provision itself is not divisible. That is a firewall. You cannot go further. It doesn't matter what the jury found is not visible. You cannot use the modified categorical approach. And on the fourth prong in Jones, um, the court noted that this was worthy of exercising discretion because of the tremendous sentence, this impermissible crime, uh, conviction imposed, which is a lifetime. That is true here. And I don't think the government disagrees with us. Of course, that's up to the court's discretion, but I don't think the court, the government disagrees that should exercise discretion. If we reach that point, um, as for the Grayson factual basis, I want it to be clear. There were multiple objections to that three objections on the grounds that this was being used as substantive evidence. The pre-trial stipulation did not affect that pre-trial pre-trial stipulation that there's no facial objections to evidence before trial. That's her economy. That's so we can deal with objections before trial. There was no reason to presume that the government would misuse its own evidence. This was that the government would engage in misconduct. Of course, a plea agreement could have been used to bolster. No, I understand that. And it's pretty clear. I mean, um, he's a turncoat witness. All of a sudden the government's in a predicament where he's denying everything. So they get to impeach. No one's disputing that, right? They get to impeachment. Then we do have this narrows and it does read, I think that it's non hearsay if the prior statement that's inconsistent was given in a sworn context. So I think that's, so, so isn't your only argument, the confrontation clause one, which wasn't objected to? No, your honor, the scenario, first of all, I believe it's just taken about them signals, but there's a parallel line of fifth amendment case law that they're not or do process people. They're not going to reach. Um, so does that, that might interact just a problem also found this is a close case where this is a statement. It was very grounded in the particular statement there. I agree that you could say due process, you could say sixth amendment, but neither of those objections were lodged here. So use of substantive use of this as substantive evidence was multiple times. Um, and I know, but, but 801 seems to allow using guilty factual resumes as substantive evidence. It's sort of, that's how I look at it. Let me just jump to the, to probably the hardest aspect of this for you, because I have real difficulties with it, but, um, either under plain error or harmlessness, it does look like the defense got exactly what it wanted. It got this guy to say, everything I said was a lot. And that dovetails with the cost of every other co-conspiracy. You're all lying because they gave you great deals. So it struck me, probably the defense didn't want to object because they're just hitting pay dirt with this guy. He's saying, I'm lying. The government told me to, and they wrote that. And that's sort of their theory as to all of the cooperatives. Sure. So if this were only used as impeachment evidence, I think that that would be true. Um, but this was used as substantive evidence and the government repeatedly called upon the factual basis. And this factual basis is detailed. It has the heading of the federal court on top. It is signed by federal prosecutors and the government multiple times says to the jury, look at this exhibit. This exhibit is important. So especially on, I think the easiest is drug quantity. Even if this court finds that drug quantity was sufficient, there's at least a reasonable possibility that the jury went and looked and it said, raise it. And his co-conspirators conspirators distributed at least 280 grams of crack. That's on our way. 34 quickly because your time's out. Um, Mr. Daly, Mr. Daly points out there's a consensus of other circuits that are reversed bats and is assessed for harmlessness. And it has to be something suggesting these jurors were not qualified. It seems impossible, but if that's what all the courts are saying, that probably whitewashes the bats and problem, right? So this court certainly has never even suggested that it would seem strange bad choice, bad, bad choice of terminology. Oh, I got it. Um, yeah. So the, the, so this court has never suggested that. And when it, um, goes through these cases, I, it would have been very easy for this court to jump to harm very quickly if that were the case, but also note that that's collapsing to prayers together. It's an independent error. If a juror is biased and we're able to show that we'd be raising a separate error on appeal. I think the real harmlessness here is that one of the jurors struck or that it was not struck with, put it back on the jury for incorrect reason was eventually removed to me. That is the harmless. Um, so I would, to the extent other courts have held that it's without much analysis, um, I would urge this court to reject that reason. Well, while you've got the Batson issue there, and it is interesting from what I've read thus far, you're not harnessing the relief you're seeking on the horse of the Batson issues. Uh, you've argued them, but it's not my sense that that's really where you're riding in to get the fifth circuit to write law about reverse Batson strikes me. You're you honing in on the points you made to start with. Is that a fair thought? I think that the most obvious missing evidence in this case, just clear on the face of the record, it's a lack of the interstate commerce elements. Um, the government is asking for an entirely new rule. We're asking this court to hold the line to just enforce the law as it's been enforced. And the second is drug quantity. That clearly was not demonstrated to be reasonably foreseeable. The nine 24, is foreclosed by this court precedent. It must be reversed. Um, and so yeah, Batson, um, is total cleanup because you even reach to, you even reach the Sean Grayson factual basis and eliminate any counts based on that first. So Batson is only to the extent this court finds that any of Mr. Porsche's convictions and I think under the other issues that we've raised, none, none of the convictions. All right. All right. Well, thank you. Um, I will say this for a statement of others. I mean, as I said, to start with this case is very unusual in the sense that, you know, there are a whole bunch of defendants, it's spread all out, et cetera. It's been up here once it's been back down. It's got a number of legal issues in it, putting aside the sufficiency issues. And we've only been able to ask you a certain amount of questions. Some of these are cabin in because they're playing error. Some of them are not. So I'm giving you a heads up. It's a high possibility that you and the other side may get something requesting supplemental briefing on some of these, these points after one, I'm a little troubled slash concerned about the government teeing this up and then saying, you know, they're sort of looking for us to, you know, scriven in an area of law when that's not the basis, the way the case was tried. And I'm not sure that that's true or not. That piece worries me a bit. But there's some other parts of this that are legal issues that I'm not sure that the briefing drills down quite as far as needed to given the gravity here. We've got a bunch of life sentences. I mean, it's a high stakes case, to put it mildly, Mr. David may be right that on the sufficiency and all that it is what it is. There's some discreet legal issues that are interspersed here that are kind of scantily briefed. I'll put it like that. I mean, you're limited by the pages in the brief, but I mean, they're addressed, but not to my liking, as fulsomely as may be warranted. And I think the questions from the panel may have signal, you know, how some of this fleshes out. Now, that's not the go file a quote 28 J letter just because you find some case to say some because that's that's not briefing and helpful, but it's I'm just giving you a heads up. Potentially, you may get some supplemental briefing to do on some discreet issues that have been raised by the oral argument to some degree by the briefing, because our goal is to get get the case right, get it correctly, not necessarily, you know, how you teed it up. I'm not saying it's going to happen, but it's, it's possible there's a lot of reckoning there. But this case has a lot of legal issues in there as well. Now, having said that, this town, Miss Mills and Mr. plays on the three of you are court appointed to represent your respective clients. And we certainly appreciate the panel does the hard work that you've done and briefing and oral argument on behalf of your clients. But moreover, our entire court is deeply appreciative of all the court appointed attorneys that help us throughout the three states. And I'm sure this is probably not your first one. And I doubt if it's your last one. But that being the case, we're immeasurably grateful for you taking the cases and dedicating yourself to excellent briefing and oral argument and helping the court out with these. This Rhodes, thank you on behalf of the public defendants as well. And Mr. Daly, always glad to have the United States in there to answer our questions. So we thank all of you for your robust presentation of the case. That being said, the case will be be submitted. And you know, we'll do what we do. We'll get it decided. So you may be excused. Stuart, Miss Tam did have two minutes of rebuttal. I'm not sure. Oh, did I cut you off, Miss Tam? I'm sorry. I beg your pardon. I didn't mean to. That's quite all right, Your Honor. I actually won't take up that much time. Miss Rhodes addressed some of the rebuttal 924 issues that I wanted to address. I did just want to point out, though, that the government mentioned it was not strained from the modified categorical approach. And the court had previously asked for page numbers on page 58 of the government's brief. It appears to suggest that a categorical approach is what should be applied here. And in doing so, it demonstrates this is an aggravated form of RICO conspiracy as a crime of violence. And I would just respectfully suggest that a categorical approach does exactly the opposite, that it in fact confirms RICO conspiracy is not a crime of violence. So I just wanted to add that. Thank you for the court's time. And that would be it for me. Okay. Thank you. And I apologize to you for overlooking you. That's why we have Miss Shirley up there, whether in the courtroom or otherwise, to keep runaway judges from messing up. But I don't take back any of the thanks that I've already given you. So it's still well-heeled. So we appreciate it. And you may be excused. Thank you, Your Honor.